UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENT LANG,

      Petitioner                             Case No. 17-cv-11975
                                                Hon. Matthew F. Leitman

v.

THOMAS MACKIE,

      Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE HABEAS CORPUS PETITION (ECF No. 1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Brent Lang is a state prisoner in the custody of the Michigan Department of Corrections.  In 2012, a jury in the Wayne County Circuit Court found Lang guilty of second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b.  The convictions arose from a shooting at an abandoned house in Detroit, Michigan on September 21, 2011.  As Angelo James ("James") and James Watson ("Watson") were relaxing on the porch of the abandoned house, two men came from behind and

1

shot them.  Both men were shot twice.  Watson died; James survived and testified against Lang at trial.

On June 20, 2017, Lang filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  (*See* Pet., ECF No. 1.)  In the petition, Lang raises eight claims regarding the weight and sufficiency of the evidence, the prosecutor's conduct, the testimony of a medical examiner, the alleged suppression of, or failure to test, evidence, the trial court's order regarding the administration of antipsychotic medication, and the alleged ineffectiveness of his trial and appellate attorneys. (*See id.*, PageID.3-4.)  The Court has carefully reviewed these claims and concluded that they do not entitle Lang to federal habeas relief.  Accordingly, for all the reasons given below, the Court **DENIES** the petition.

# I

Lang was charged with first-degree, premeditated murder, assault with intent to commit murder, felon in possession of a firearm, and felony firearm.  He was tried before a jury in Wayne County Circuit Court.  The Michigan Court of Appeals summarized the relevant facts as follows:

> Angelo James (James) was with the decedent, James Watson (Watson), and another man, Courtney Putman, on the porch of an abandoned home in Detroit, Michigan. James was drinking on the nearby sidewalk when he saw defendant riding down the street on a mountain bicycle, dressed in all black and a hood. James recognized

2

defendant from seeing him over the course of six years within the neighborhood.  James later saw a different man riding the same bike.

At some point later James went to the store to buy more alcohol, and returned to the porch with Watson.  Putnam went to his house across the street.  While Watson was rolling marijuana, James did not smoke any.  Watson told James that he had a .357 handgun nearby, and James knew that Watson sold marijuana.  James then heard a noise from the side of the house and stood up to investigate. There were streetlights that illuminated the area.  James saw defendant and another man come from the side of the house, and both men were pointing guns at James and Watson.  Defendant ordered them not to move.

James initially froze.  But as he turned to run into the house, the shooting began, and he was hit in the arm and leg.  He heard more shots ring out, and saw Watson come into the house.  James stood up, but when he reached Watson, both men collapsed.  Watson was gasping, and eventually became still.  James heard Putnam calling his name, and with help he was able to get to a car.  On the way to the hospital they saw an ambulance, which transported James to the hospital.  James testified that he did not tell the police who shot him until after surgery because he was in pain at first.  He testified that he was sure defendant was one of the men with a gun.

The police arrived at the house and recovered a .357 Taurus revolver from the porch.  They also found James's Michigan identification in the vicinity of the gun, and in the walls of the house they found what appeared to be bags of marijuana.  They also collected three 45 automatic caliber fired cartridge cases, one nine millimeter Luger caliber fired cartridge case, and a .357 magnum caliber fired cartridge case.  The five shot Taurus revolver that was found contained four .357 magnum caliber cartridges.

3

> The police also discovered Watson, who had been shot in the chest and leg.   From Watson's leg wound, they extracted a fired bullet jacket and one core portion of the jacketed bullet. The bullet to his chest perforated his aorta, which was enough to kill him.

*People v. Lang*, 2014 WL 265528, at *1 (Mich. Ct. App. Jan. 23, 2014).

Lang did not testify or present any witnesses at trial, and he stipulated that, for purposes of the felon-in-possession count, he had a prior conviction and his right to carry a firearm had not been restored. (*See* 7/23/12 Trial Tr., at 132-133, ECF No. 8-6, PageID.463-464.)  His defense was that there was no physical evidence linking him to the crimes and that James' identification of him as the shooter was not reliable or credible. (*See* 7/24/12 Trial Tr. at 17-25, ECF No. 8-7, PageID.484-492.)

On July 24, 2012, the jury found Lang guilty of second-degree murder, as a lesser-included offense of first-degree murder, and guilty, as charged, of assault with intent to commit murder, felon in possession of a firearm, and felony firearm. (*See id*. at 56-58, PageID.523-525; 7/24/12 Verdict Form, ECF No. 8-8, PageID.530-531.)  On August 7, 2012, the trial court sentenced Lang to five years in prison for the felony-firearm conviction, and concurrent terms of thirty years, five months, to sixty years in prison for the murder conviction, twenty-two and a half to thirty-five years for the assault conviction, and one to five years for the felon-in-possession

4

conviction. (*See* 8/7/12 Sentencing Tr. at 18-20, ECF No. 8-9, PageID.549-551; Judgment of Sentence, ECF No. 8-10, PageID.569.)

Lang appealed his convictions as a matter of right in the Michigan Court of Appeals. (*See* ECF No. 8-10.)  He argued through appellate counsel that:  (1) the weight of the evidence preponderated against the verdict; (2) there was insufficient evidence that he killed Watson; and (3) he was denied his constitutional rights by (a) the prosecutor's bolstering of James's testimony and (b) trial counsel's failure to object to certain remarks made by the prosecutor.  These arguments form the basis for Lang's first three habeas claims.  The Michigan Court of Appeals found no merit in the arguments.  It affirmed Lang's convictions and concluded that:

> [t]he verdicts were not against the great weight of the evidence nor was there insufficient evidence to support defendant's convictions.  Moreover, there were no instances of prosecutorial misconduct nor was defendant denied the effective assistance of counsel.

*Lang*, 2014 WL 265528, at *5.

Lang raised these same three claims in an application for leave to appeal in the Michigan Supreme Court. (*See* ECF No. 8-11.)  On September 29, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to that court. *See People v. Lang*, 853 N.W.2d 353 (Mich. 2014).

5

On July 27, 2015, Lang filed a habeas corpus action in the United States District Court for the Western District of Michigan.  Chief United States District Judge Robert J. Jonker summarily dismissed the petition without prejudice due to Lang's failure to exhaust available state-court remedies. *See Lang v. Trierweiler*, No. 15-cv-00771 (W.D. Mich. Aug. 6. 2015).

Lang subsequently filed a *pro se* motion for relief from judgment in the state trial court. (*See* Mot. for Relief from J., ECF No. 8-12.)   He argued that:  (1) he was deprived of his rights to compulsory process and a fair trial when the prosecution failed to call the pathologist who performed Watson's autopsy, called a different doctor to testify about the autopsy, and "utilized [the second doctor's] testimony to incorporate the autopsy report into the record"; (2) the prosecution violated Watson's rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it withheld bullets recovered during the autopsy; (3) the prosecution withheld gunshot residue, fingerprint evidence, and casings; (4) the trial court placed an external constraint of Lang's ability to aid in his defense by ordering him to take psychotropic medication during trial; and (5) appellate counsel was ineffective for failing to raise these claims and a claim about trial counsel on direct appeal.  These arguments form the basis for habeas claims four through eight in the current petition.

The state trial court denied Lang's post-conviction motion "for lack of merit in the grounds presented." (*See* Order Denying Mot. for Relief from J., ECF No. 8-13.) Lang filed an application for leave to appeal the trial court's decision in the Michigan Court of Appeals, but that court denied leave to appeal for failure to establish that the trial court erred when it denied Lang's motion. *See People v. Lang*, No. 333444 (Mich. Ct. App. Sept. 22, 2016). Lang then filed an application for leave to appeal in the Michigan Supreme Court. That court denied leave to appeal on May 31, 2017, because Lang had failed to establish an entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Lang*, 895 N.W.2d 522 (Mich. 2017).

Lang subsequently filed his *pro se* habeas petition in this Court. (*See* Pet., ECF No. 1.) As described above, he raises the three claims that he presented to the state courts on direct appeal and the five claims that he presented to the state courts on collateral review of his convictions. (*See id.*, PageID.3-4.)

Respondent Thomas Mackie argues in an answer to the petition that Lang's first claim (weight of the evidence) is not cognizable on habeas review and that the first part of the third claim (prosecutorial misconduct) is procedurally defaulted. Respondent also contends that Lang is not entitled to relief on his vague seventh claim regarding medication and that the state courts' rejection of Lang's other claims

was not unreasonable. (*See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 7, PageID.19-20, 24.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

Lang first claims that "the weight of the evidence [at trial] so preponderates against the verdict … that due process of law [was] offended, the verdict cannot stand, and a new trial should be ordered." (Pet., ECF No. 1, PageID.3.)

Lang is not entitled to federal habeas relief on this claim.  "[A] federal court is only allowed to review issues of federal law in a habeas proceeding," and a

"manifest weight-of-the evidence argument is a state-law argument." *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *see also Wright v. Duncan*, 31 F.Supp.3d 378, 424-25 (N.D.N.Y. 2011) (collecting cases and noting that "[a] claim that a jury verdict was against the weight of the evidence is purely a state law claim" and is not cognizable on habeas review). Lang is therefore not entitled to federal habeas relief on this claim. The Court will now proceed to review Lang's constitutional challenge to the sufficiency of the evidence presented at trial.

## B

Lang next asserts that he is entitled to federal habeas relief from his murder conviction because the prosecution's evidence was insufficient to prove beyond a reasonable doubt that he killed Watson. (*See* Pet., ECF No. 1, PageID.3.) The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant next argues that there was insufficient evidence to support his conviction for second-degree murder. We review "de novo a challenge on appeal to the sufficiency of the evidence." *People v. Ericksen,* 288 Mich. App. 192, 195; 793 NW2d 120 (2010).
>
> "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Tennyson,* 487 Mich. 730, 735; 790 NW2d 354 (2010) (internal quotations and citations omitted). "All conflicts in the evidence must be

9

resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v. Unger,* 278 Mich. App. 210, 222; 749 NW2d 272 (2008). However, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Allen,* 201 Mich. App. 98, 100; 505 NW2d 869 (1993).

In the instant case, defendant challenges the identity element supporting his conviction. "[I]t is well settled that identity is an element of every offense." *People v. Yost,* 278 Mich. App. 341, 356; 749 NW2d 753 (2008). While defendant argues that his identify was not proven beyond a reasonable doubt, we have recognized "that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v. Davis,* 241 Mich. App. 697, 700; 617 NW2d 381 (2000). Further, "credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.*

From the evidence presented at trial, a rational trier of fact could have reasonably determined that defendant was one of the two men that James identified. The firearm and tool mark expert testified that the casings he examined came from at least three different weapons. James testified that he saw defendant just before the shooting. James identified defendant soon after the shooting as one of the two men who pointed a gun at him and Watson. Based on this unequivocal identification of defendant, a rational trier of fact could have concluded that defendant's identity as a shooter was proven beyond a reasonable doubt. While defendant again argues that the prosecution could not prove his identity as a shooter because Watson was shot with his own weapon, as discussed *supra,* that argument is without merit.

10

*Lang*, 2014 WL 265528, at *3.

1

The clearly established federal law governing Lang's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context. As the United States Court of Appeals for the Sixth Circuit recently explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas

11

proceedings because they are subject to two layers of deference:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.
>
> *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam) (citations and internal quotation marks omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020); *accord Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017).

## 2

Lang has failed to show that the Michigan Court of Appeals' decision denying relief on this claim was contrary to, or unreasonably applied, clearly established federal law. As the Sixth Circuit has recognized, "the testimony of a single witness is sufficient to support a conviction." *United States v. Osborne*, 886 F.3d 604, 613 (6th Cir. 2018) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). And a reviewing court "does not reweigh the evidence or redetermine the

credibility of witnesses . . . ." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id.*

Here, an eyewitness to the shooting – James – testified that he was "sure" Lang was the shooter. (7/23/12 Trial Tr. at 35, ECF No. 8-6, PageID.366.) James testified that he looked directly at Lang before the shooting, recognized Lang's height and clothes, and that nothing obstructed his view of Lang. (*See id.* at 15-16, 19, 24-25, 49, ECF No. 8-6, PageID. 346-347, 350, 355-356, 380.) James further testified that he could identify Lang because he knew Lang's face from seeing Lang in the neighborhood for about six years before the shooting incident, and because he had seen Lang a few days before the shooting. (*See id.*) Finally, Lang cross-examined James with respect to James's identification, but the jury ultimately credited James's positive identification of Lang as the shooter.

Under these circumstances, it was not unreasonable for the Michigan Court of Appeals to reject Lang's insufficiency-of-the-evidence claim. Lang is therefore not entitled to federal habeas relief on this claim.

## C

Lang next alleges that the prosecutor committed misconduct and violated Lang's constitutional rights when the prosecutor wrongly bolstered James's

character and testimony twice during closing arguments.  First, Lang objects to the

prosecutor's statement that:

> **I think a lot of things [James] said were very, very –
> says a lot about his character.  He was very open about
> what was going on out there.**  He told you they were
> drinking, told you that the deceased was smoking weed.
> He could have painted another picture[;] he didn't do that.
> He told us everything that was happening.  That was
> corroborated by Dr. Diaz also when Dr. Diaz said that
> there was a toxicology report performed on the deceased
> and the deceased did indeed have marijuana in his system,
> exactly what Mr. James told us.

(7/24/12 Trial Tr. at 9, ECF No. 8-7, PageID.476; emphasis added).  Second, Lang

objects to the prosecutor's statement that:

> So, one of the bullets that came out of the deceased is
> consistent with what Mr. James told us.  **Mr. James was
> very upfront**, he said the victim told him he carries a gun,
> he told me he carries a 357.  And low and behold, the bullet
> that is taken out of the deceased is a 357.
>
> The State Police tells you that the gun that they analyzed
> held five shots, one shot is missing.  There was (sic) four
> shots in that revolver.  **Well, that's consistent with a
> person that, and I think says a great deal about his
> character**,  because he tells you that the deceased carried
> a gun or at least he told him he carried a gun, he said it was
> a 357, the round that is retrieved from his body is a 357,
> it's a five shot according to the State Police, only one
> bullet is missing so there's four remaining bullets in that
> gun.  Well, we can narrow it down to Mr. James didn't
> shoot himself, the victim who survived.  It's consistent
> with what Mr. James said, he said there were two people
> out there, two people had guns that he saw, that he knew

14

> they had guns, okay.  That he saw them, Mr. Lang was one
> of them, Mr. Lang was the person that was pointing one at
> him saying don't move and he decided to move.  Now, we
> know the deceased didn't shoot himself in the chest and
> server (sic) his aorta.  So, everything that Mr. James is
> telling us is consistent, is corroborated with everything
> that we've heard.

(*Id*. at 14-15, PageID.481-482; emphasis added).

Lang raised this claim on direct review, and the Michigan Court of Appeals

rejected it under a review for "plain error"[1]:

> The test for prosecutorial misconduct is whether the
> defendant was denied a fair and impartial trial.  *People v.
> Dobek,* 274 Mich. App. 58, 63; 732 NW2d 546 (2007).
> "Generally, prosecutors are accorded great latitude
> regarding their arguments and conduct."  *People v.
> Bahoda,* 448 Mich. 261, 282; 531 NW2d 659 (1995)
> (quotation marks, citation, and brackets omitted).
> "Prosecutors have discretion on how to argue the facts and
> reasonable inferences arising therefrom, and are not
> limited to presenting their arguments in the blandest terms

---

[1] Respondent argues that this claim is procedurally defaulted because the Michigan Court of Appeals reviewed it for "plain error" after Lang failed to object to the prosecution's statements at trial.  While it is true that "[f]ederal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule,'" *Johnson v. Lee,*  136 S. Ct. 1802, 1803–04 (2016) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)), a procedural default ordinarily "'is not a jurisdictional matter,' " *id*. at 1806 (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997)).  In the interest of judicial economy, a federal court may bypass a procedural-default question when the merits of the claim are easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Court proceeds to address the merits of Lang's prosecutorial-misconduct claim because that approach is more efficient than analyzing whether Lang's claim is procedurally defaulted.

possible." *People v. Meissner,* 294 Mich. App. 438, 456; 812 NW2d 37 (2011). Although the prosecution may not vouch for the credibility of a witness, it may comment on whether a witness is worthy of belief. *People v. Schultz,* 246 Mich. App. 695, 712; 635 NW2d 491 (2001); *People v. Launsburry,* 217 Mich. App. 358, 361; 551 NW2d 460 (1996).

In the instant case, defendant argues that the prosecution improperly vouched for James's credibility when stating that because James disclosed that he and Watson were drinking alcohol, had marijuana, and had a gun, he had character for truthfulness. This was not improper vouching. The prosecution did not indicate that he had some type of special knowledge of the witness's truthfulness. *Meissner,* 294 Mich. App. at 456. While it is unfortunate that the prosecutor used the word "character" in his argument it is clear from the record that he was arguing not the witness['s] character but his credibility. The prosecution merely argued that based on the disclosures the witness made, he was worthy of belief because he was giving truthful testimony. *Dobek,* 274 Mich. App. at 66 (a prosecutor is allowed to present "arguments from the facts and testimony that the witnesses at issue were credible or worthy of belief.").

Moreover, the trial court in the instant case instructed the jury that the lawyer's statements and arguments were not evidence, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham,* 256 Mich. App. 265, 279; 662 NW2d 836 (2003). Thus, defendant has failed to demonstrate prosecutorial misconduct.

*Lang*, 2014 WL 265528, at *4 (footnote omitted).

16

Lang has not shown that this decision was contrary to, or an unreasonable application of, clearly established federal law.  Federal habeas courts assess a state court's decision on a prosecutorial-misconduct claim under *Darden v. Wainwright*, 477 U.S. 168 (1986).  Under *Darden*, "is not enough that the prosecutors' remarks were undesirable or even universally condemned. If a prosecutor's comments were improper, the question becomes whether they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Stermer v. Warren*, ___ F.3d ___, 2020 WL 2503269, at *13 (6th Cir. May 15, 2020) (internal quotation marks omitted).

Lang has not established that the Michigan Court of Appeals unreasonably rejected his bolstering claim.  Improper "[b]olstering occurs when the prosecutor implies that the witnesses's testimony is corroborated by evidence known the government but not known to the jury." *United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019).  Here, Lang has not shown that the prosecutor improperly bolstered James's testimony with information that was unknown to the defense.  Nor has he shown that the prosecutor implied that James's testimony was corroborated by evidence known only to the prosecution and not to the jury.  Thus, Lang has not established that the Michigan Court of Appeals unreasonably rejected his bolstering claim.

Lang has also not demonstrated that the Michigan Court of Appeals unreasonably rejected his vouching claim.  He has not shown that the prosecutor's isolated comment about James's character, even if it were improper vouching, so infected the trial as to render it fundamentally unfair.  Moreover, the trial court instructed the jurors at the beginning of the case and during its charge to the jury that the attorneys' remarks were not evidence and that the jurors should only consider the properly admitted evidence. (*See* 7/19/12 Trial Tr. at 108-109, ECF No. 8-5, PageID.313-314; 7/24/12 Trial Tr. at 32-33, ECF No. 8-7, PageID.499-500.)  The trial court also instructed the jurors that it was *their* job to decide which witnesses to believe and how important the witnesses' testimony was. (*See* 7/19/12 Trial Tr. at 109-110, ECF No. 8-5, PageID. 314-315.)  Given the trial court's jury instructions, and for the other reasons stated above, Lang has not shown that the Michigan Court of Appeals' denial of this claim was unreasonable.  Lang is therefore not entitled to federal habeas relief on this claim.

## D

Lang next argues that his trial counsel was ineffective when counsel failed to object to the prosecutor's remarks about James's testimony. (*See* Pet., ECF No. 1, PageID.3; Lang Reply Br., ECF No. 9, PageID.807.)  Lang raised this claim on direct review, and the Michigan Court of Appeals rejected it:

18

Lastly, defendant argues that he was denied the effective assistance of counsel when his counsel failed to object to the prosecutor's improper statements during closing argument. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v. LeBlanc,* 465 Mich. 575, 579; 640 NW2d 246 (2002). When reviewing a claim of ineffective assistance of counsel that has not been preserved for appellate review, a reviewing court is limited to mistakes apparent on the record. *People v. Davis,* 250 Mich. App 357, 368; 649 NW2d 94 (2002).

In order to establish a claim for ineffective assistance of counsel, a defendant must first demonstrate that "counsel's representation fell below an objective standard of reasonableness," which requires a showing "that counsel's performance was deficient." *Strickland v. Washington,* 466 U.S. 668, 687; 104 S Ct 2052; 80 L.Ed.2d 674 (1984); *People v. Grant,* 470 Mich. 477, 485; 684 NW2d 686 (2004). In making this showing, a defendant must overcome the strong presumption that trial counsel's behavior was sound trial strategy. *Grant,* 470 Mich. at 485. The second prong a defendant must demonstrate is that "the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. . . ." *Strickland,* 466 U.S. at 687. In other words, a defendant must demonstrate that "there was a reasonable probability that the outcome of the trial would have been different had defense counsel" adequately performed. *Grant,* 470 Mich. at 496.

As discussed above, the prosecution's statements were proper. "Because the comments were proper, any objection to the prosecutor's arguments would have been futile. Counsel is not ineffective for failing to make a futile objection." *People v. Thomas,* 260 Mich. App 450,

457; 678 NW2d 631 (2004). Moreover, any minimal prejudice was alleviated with the trial court's instruction, and it did not result in a reasonable probability that the outcome of the trial would have been different. *Grant,* 470 Mich. at 496.

*Lang*, 2014 WL 265528, at *4-*5 (headings omitted).

The Michigan Court of Appeals correctly recognized that an ineffective-assistance-of-counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the Michigan Court of Appeals adjudicated Lang's ineffective assistance of counsel claim on the merits, AEDPA's deferential standard of review applies to the claim. *See Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). Under AEDPA, "the question" for this Court "is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

Lang has not shown that the Michigan Court of Appeals' conclusion that he did not suffer prejudice was an unreasonable application of *Strickland*. Although Lang's trial counsel did not object to the prosecutor's remarks about James's openness and character, counsel challenged James's credibility and identification of Lang in other ways. She cross-examined and re-cross-examined James about his ability to see Lang during the crime, his familiarity with Lang, his initial failure to

inform people that Lang had shot him, and his state identification card, which was found near Watson's gun. (*See* 7/23/12 Trial Tr. at 35-54, 56-58, ECF No. 8-6, PageID.366-385, 387-89.)  Trial counsel raised these same issues during her closing argument that followed the prosecutor's disputed remarks.  During that argument, trial counsel also pointed out, among other things, that there was no physical evidence to support the prosecution's theory and that, even though James claimed to have known Lang for six years, he had never spoken to Lang.  Trial counsel also emphasized the fact that James failed to mention the shooter's name to either his friend Putnam or to the ambulance driver on his way to the hospital. (*See* 7/24/12 Trial Tr. at 17-25, ECF No. 8-7, PageID.484-492.)  On this record, Lang has not shown that the Michigan Court of Appeals unreasonably concluded that he did not suffer any prejudice.

For all of these reasons, Lang is not entitled to federal habeas relief on this claim.

## E

Lang next argues that he was denied his constitutional right of confrontation when the prosecution called Dr. Francisco Diaz to testify about Watson's autopsy, even though Dr. Diaz did not perform that autopsy or draft the autopsy report.  Lang further argues that the introduction of the autopsy report – through Dr. Diaz – falls

squarely within the prohibition against hearsay because Dr. Diaz did not draft the

report.  Finally, Lang argues that Dr. Diaz's remarks at trial were testimonial under

*Davis v. Washington*, 547 U.S. 813 (2006), because Dr. Diaz did more than establish

the manner of death.  (*See* Reply Br., ECF No. 9, PageID.807-808.)

The state trial court considered Lang's objection to Dr. Diaz's testimony in

connection with Lang's motion for relief from judgment, and rejected it:

> At trial the forensic examiner testified that the pathologist
> who performed the autopsy had retired and was therefore
> unavailable.  There was a stipulation that Dr. Diaz was
> qualified to testify as an expert in the field of pathology.
> [….] The defendant has not shown prejudice by the
> unavailability of the original forensic pathologist.  The
> defendant speculates without support that the original
> pathologist would have testified that the decedent died
> from the gunshot to his leg instead of the wound in his
> chest.  The defendant's claim of actual innocence is legally
> insufficient; the defendant is not alleging that he was not
> present at the scene or that he did not shoot the decedent.

(Order Denying Mot. for Relief from J., ECF No. 8-13, PageID.708-709) (footnotes

omitted).

To the extent Lang argues that admission of Dr. Diaz's testimony and/or the

autopsy report violated Michigan's hearsay rules, "[w]hat is or is not hearsay

evidence in a state court trial is governed by state law," *Johnson v. Renico*, 314

F.Supp.2d 700, 705 (E.D. Mich. 2004), and state law questions are not cognizable

on federal habeas review. *See*, *e.g.*, *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.

2000) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.")).  Moreover, Lang has not identified any clearly established federal law that an autopsy report, or testimony based on an autopsy report, is testimonial.  And he has not shown how he is entitled to federal habeas relief on this claim in the absence of such clearly established federal law. *See*, *e.g.*, *Mitchell v. Kelly*, 520 F. App'x 329, 331 (6th Cir. 2013) (affirming denial of habeas petition on the ground that there is a "lack of Supreme Court precedent establishing that an autopsy report is testimonial"); *Portes v. Capra*, 420 F.Supp.3d 49, 55-56 (E.D.N.Y. 2018) (denying habeas petition and holding that the admission at trial of an autopsy report "cannot form the basis for habeas relief … because of the … uncertainty of how the Supreme Court would rule on this issue").

For all of these reasons, Lang is not entitled to federal habeas relief on this claim.

## F

Lang next alleges that the prosecution committed a "*Brady* violation" when it purportedly withheld exculpatory evidence regarding a bullet recovered from Watson's leg during the autopsy.  Watson was shot twice, once in the leg and once in the chest, and Lang insists that the order of the bullet wounds was a material fact

in dispute.  He maintains that the gunshot to Watson's right leg – and not the shot to Watson's chest – could have been the fatal gunshot.  Thus, Lang says that when the prosecution suppressed detailed information about the bullet's size and weight, it deprived him of a substantial defense. (*See* Pet., ECF No. 1, PageID.4; Lang Reply Br., ECF No. 9, PageID.809.)

Lang's claim derives from the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963).  The Supreme Court held in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id*. at 87.  A *Brady* claim has three components:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Lang raised this claim in his motion for relief from judgment, and the state trial court rejected it. It held that "[t]here was no *Brady* violation because the .357 bullet was disclosed to the defense during discovery." (Order Denying Mot. for Relief from J., ECF No. 8-13, PageID.709.)

24

Lang has failed to establish that the state trial court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. Simply put, Lang has not shown that the bullet from Watson's leg was suppressed and not disclosed to his defense.  And to the extent that Lang argues that the State should have conducted additional tests with respect to that bullet, such a claim does not arise under *Brady*.  For all of these reasons, Lang has not shown that the state trial court's denial of this claim was unreasonable.  Lang is therefore not entitled to federal habeas relief on this claim.

## G

Lang alleges next that the prosecution suppressed gunshot residue, fingerprint evidence on the gun found at the crime scene, and a bullet casing taken from the Watson's leg in violation of *Brady*, *supra*.  (*See* Pet., ECF No. 1, PageID.4.)  Watson raised this claim in his motion for relief from judgment, and the state trial court rejected it:

> [t]he defendant has not shown a *Brady* violation because fingerprint analysis on the decedent's gun and gunpowder residue tests on the decedent would not have affected the outcome of the trial.  There was circumstantial evidence that the decedent may have shot himself in the back of the leg; however, the gunshot wound to the chest was the fatal wound.  In addition, the surviving victim testified that he knew of the defendant from the neighborhood for several years and saw the defendant and another man ambush him and the decedent at the side of the porch.

25

(Order Denying Mot. for Relief from J., ECF No. 8-13, PageID.709.)

Lang has failed to show that the state trial court's denial of this *Brady* claim was contrary to, or an unreasonable application of, clearly established federal law. Although Lang styles this claim as a *Brady* violation, he seems to actually be claiming that the police failed to test Watson's clothing, gun, and the core portion of the bullet found in Watson's body for potentially exculpatory evidence. Lang contends that testing would have established who fired the .357 revolver found at the crime scene and thus who committed the murder. (*See* Reply Br., ECF No. 9, PageID.809, 811-812.) But Lang does not appear to be arguing that any evidence was ever *suppressed*. This claim therefore does not fall within the ambit of *Brady*.

Moreover, to the extent Lang argues that the State violated his constitutional rights when it failed to conduct the testing he identifies, the claim also fails. Lang has not shown how the Due Process Clause of the Fourteenth Amendment is "violated when the police fail to use a particular investigatory tool." *Arizona v. Youngblood*, 488 U.S. 51, 58-59 (1988). Nor has he shown that police "have a constitutional duty to perform any particular tests." *Id.*

For all of these reasons, Lang has failed to show that he is entitled to federal habeas relief on this claim.

## H

Lang next asserts that the state trial court deprived him of a fair and impartial trial when it ordered medical professionals to administer antipsychotic medication to him during trial to render him competent.  Lang contends that the trial court's order placed an external constraint on his ability to aid in his defense.  Lang also contends that the trial court failed to conduct a proper inquiry into whether the side effects of the medication interfered with his ability to assist counsel in preparing a defense. (*See* Pet., ECF No. 1, PageID.4; Reply Br. at 14-15, ECF No. 9, PageID.813-814.)

Lang raised this claim in his motion for relief from judgment, and the state trial court rejected it because Lang's "vague argument [did] not establish any error that would entitle[] him to relief from judgment." (Order Denying Mot. for Relief from J., ECF No. 8-13, PageID.709.)

Lang has not shown that the state trial court's decision was contrary to, or an unreasonable application of, clearly established federal law.  The record before the Court indicates that Lang's trial counsel asked the trial court to ensure that Lang was taking his medications.  Trial counsel made this request after both she and Lang's mother informed the trial court that Lang would hear voices and become paranoid when he did not take his medications.  Lang's mother also told the trial court that

when Lang was taking his medications, he was able to comprehend matters and he was rational and stable. The trial court then agreed to make sure that Lang was properly medicated and agreed to have Lang evaluated for competency and criminal responsibility. (*See* 3/27/12 Trial Tr. at 45-52, ECF No. 8-3, PageID.187-194.) At the competency hearing a few months later, trial counsel noted that, according to the criminal responsibility report, Lang was competent and able to assist at trial so long as he was on medication. (*See* 7/10/12 Competency Hr'g Tr. at 2-5, ECF No. 8-4, PageID.201-204.) Under these circumstances, it was not unreasonable for the state trial court to conclude that the Lang had failed to establish an entitlement to relief on this claim. Moreover, Lang has not alleged that the medication caused him to suffer from side effects. Nor has he alleged that he was unwilling to take the medication or explained how it interfered with his ability to assist in his defense.

For all of these reasons, Lang is not entitled to federal habeas relief on this claim.

# I

Finally, Lang alleges that he was denied his constitutional right to the effective assistance of counsel because his appellate counsel failed to raise all of his claims, including a claim about trial counsel, on appeal to the Michigan Court of Appeals. (*See* Pet., ECF No. 1, PageID. 4.) In Lang's reply brief, he further asserts that, if

trial counsel had objected to Dr. Diaz's testimony and had asked the medical examiner who had performed Watson's autopsy to testify, that testimony would have cast doubt on the prosecution's case. (Reply Br., ECF No. 9, PageID.815-816.)

Lang raised this claim in his motion for relief from judgment, and the state trial court rejected it:

> The defendant claims that he received ineffective assistance of his trial counsel and his appellate counsel. The defendant argues that his trial attorney failed to insist that the original forensic examiner be called to testify regarding the "chain-of-command" of the .357 bullet fragment. He claims his appellate attorney denied him his constitutional right to effective assistance when he failed to raise the issue of ineffective assistance of trial counsel and the other claims presented herein in his direct appeal.

> In order to establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To support a claim that appellate counsel's failure to raise meritorious issues on appeal denied him guaranteed constitutional rights, the defendant must show that his appellate counsel's performance fell below an objective standard of reasonableness and that appellate counsel's representation was constitutionally deficient.

> The court having found that the issues presented in this appeal have no merit, the court also finds that the trial and appellate attorneys were not deficient in their representation of the defendant at trial or on appeal. The defendant has not shown an error that affected his substantial rights or deprived him of a fair trial. There is no significant possibility that the defendant is innocent or that a miscarriage of justice occurred. The defendant's motion for relief from judgment is hereby denied for lack of merit in the grounds presented.

(Order Denying Mot. for Relief from J., ECF No. 8-13, PageID.709-710 (footnotes omitted).)

Lang has not shown that this decision was contrary to, or an unreasonable application of, clearly established federal law. On habeas review, the proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*, *supra*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim about appellate counsel, Lang must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issues. *Id*. (citing *Strickland,* 466 U.S. at 687-91, 694).

For all of the reasons stated above, Lang has not established that any of the claims that he says should have been raised on appeal were meritorious. Thus, Lang has not shown that his appellate counsel was ineffective for failing to raise them.

30

*See*, *e.g.*, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit"); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial"). Thus, Lang has not demonstrated that the state trial court's rejection of this claim was unreasonable.

Lang is therefore not entitled to federal habeas relief on this claim.

## IV

In order to appeal this Court's decision, Lang must obtain a certificate of appealability.  To do so, Lang must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States* 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Lang has failed to demonstrate entitlement to federal habeas relief with respect to his claims because they are all devoid of merit.  The Court therefore denies Lang a certificate of appealability.

Although this Court declines to issue Lang a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002).   While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Lang's claims, an appeal could be taken in good faith.   Therefore, Lang may proceed *in forma pauperis* on appeal.

## V

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Lang's petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Lang a certificate of appealability, and (3) **GRANTS** Lang permission to appeal *in forma pauperis.*

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  July 8, 2020              UNITED STATES DISTRICT JUDGE

32

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 8, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764